**LONG, d. b. a. LONG'S SERVICE STATION, Plaintiff, v. ATLANTIC FREIGHT LINES, INC., Defendant.**

Common Pleas Court, Madison County.

No. 19252.   Decided February 1, 1952.

Robert E. Wright, Mt. Sterling, for plaintiff.
Ballard, Dresbach & Crabbe, Columbus, for defendant.

## OPINION

By BELL, J.

Plaintiff is engaged in the operation of a gasoline service station in Mt. Sterling, Ohio.   About four or six weeks prior

to January 20, 1951, one Bill O'Day, driving a truck bearing the insignia of the Atlantic Freight Lines on the door of the cab stopped at plaintiff's station desiring to purchase gasoline on credit, stating that the bill would be paid every two weeks "and that the company was good." A short time thereafter, within an hour, another Atlantic Freight Lines truck stopped at the station and the driver told plaintiff he had better get an authorization for credit from an Atlantic Freight Lines dispatcher named D'Agostino at Ambridge, Pennsylvania. Plaintiff placed a long distance telephone call to the Atlantic Freight Lines at Ambridge, also giving the operator a phone number supplied by the second driver, and talked with a man who identified himself as D'Agostino. After stating what the driver O'Day wanted, Plaintiff was told by D'Agostino "you take care of that and keep him a-goin' and I'll see that your money is there every two weeks."

For two or three two-week periods thereafter Plaintiff received his money in cash from the driver. On one occasion the payment was late and Plaintiff again phoned D'Agostino and was advised by him that the money was on its way in care of the driver. About an hour later the driver arrived with the money and paid Plaintiff.

After January 20, 1951, no payments were made on the account and the balance due thereon is the subject of this action.

Two letters from the President of the Atlantic Freight Lines at Uniontown, Pennsylvania, addressed to counsel for plaintiff were admitted in evidence. These letters indicated that D'Agostino was a dispatcher for the company but had no authority to authorize the extension of credit. They also indicated that the company had discovered that D'Agostino had mishandled some company Advance Funds and that the matter had been turned over to a bonding company.

Testimony of the defendant, admitted over the objection of plaintiff, was to the effect that the Atlantic Freight Lines acts as a freight agent only and not as a freight line as such. The company, according to its evidence, owns no tractors for over-the-road hauling and leases all its power equipment. Also admitted over the objection of plaintiff was a lease between one William Sedich and the Atlantic Freight Lines.

This lease reads in part as follows:

"Lessor (Sedich) leases and delivers to the Lessee (Atlantic Freight Lines) the following described motor vehicle for the duration of this lease to be used by lessee in transporting property in interstate commerce . . . . (describing truck driven by Bill O'Day) . . . . Lessor agrees that . . . . lessor shall

fully maintain, service and keep the vehicle . . . . in good repair, provide all gas, oil, tires and other equipment necessary and pay driver's salary."

The lease also provides for payment to the lessor for use of his equipment. The name of William Sedich is typed on the contract under which appears in handwriting: "by William B. O'Day." The name of the lessee appears in print as Atlantic Freight Lines, Inc., followed by: "F. J. Larkin." Larkin is the manager of the Pittsburgh office of defendant. There is no reference in the record to the identity of Sedich, but it is assumed he is the owner of the truck involved.

According to defendant's evidence, D'Agostino was in the employ of the defendant. He attended company meetings and was familiar with the trucking operations of the Company. When the Pittsburgh office of the company received a notice of steel to be hauled from the mill, that office notified D'Agostino who in turn dispatched various drivers and their trucks. The company sent checks for drivers to D'Agostino as an advance on their expenditures and to pay their credit expenses. It was shown by defendant's testimony that these checks sent to D'Agostino were always made payable to individual drivers and that no cash was sent to D'Agostino except his own commission on loads dispatched.

It is conceded by counsel in argument that plaintiff in dealing with. D'Agostino was dealing with an apparent agent of the defendant. And the question resolves itself into a determination of whether the plaintiff exercised the degree of care that the law imposes on one who is dealing with an apparent agent.

The law makes no distinction between agents of corporations and agents of natural persons with respect to liability for the acts of the agents. In fact, the doctrine of identity of principal and agent applies with peculiar propriety to corporations, which are capable of action only through the medium of agents, and which touch, infringe upon, and come into contact with individuals and the public only by means of their agents and servants. **Atlantic and G. W. Ry. Co. v. Dunn, 19 Oh St 162.**

That authority may be conferred upon an agent by implication is too well settled to require the citation of authority. If a principal treats his agent in such way as to hold him out as one authorized to represent him, he will not be permitted to say that the agent had authority to represent him in respect to some matters but not to represent him in other matters within the scope of the authority ostensibly or apparently conferred,—for the extent of the authority conferred upon the agent, as well as the existence

of the relation of principal and agent, may be inferred from the course of business which the principal permits the agent to transact for him. This constitutes the only exception to the general rule that an agent can bind his principal only when acting within the scope of his authority. And this exception can be applied only when the person dealing with the purported agent is free of negligence.

Did the plaintiff in this case act as a reasonably prudent man should have acted in this situation? The Court is of the opinion this question should be answered in the affirmative. Here is a business man who in the course of an hour or so has two trucks stop at his place of business, both trucks bearing "a big round sign" having "Atlantic Freight Lines painted right on the door." One driver desires the extension of credit. The other advises him to call a certain person at a certain telephone number for a credit authorization. He calls that person and is told to extend credit and that he will be paid every two weeks. He does, and for six weeks is paid. This court is of the opinion that the plaintiff was not bound to write to the defendant for an authorization of credit but could reasonably rely on the representations of those who were clothed by the defendant with apparent authority to make such authorization.

The defendant has permitted trucks to travel the highways of this country bearing its name and insignia, proclaiming to all who see them that it is engaged in the trucking business. Unquestionably this has some advertising value which must redound to the defendant's advantage. Should it be allowed to send its name abroad, emblazoned on the cab of a truck, reaping whatever benefit may be derived therefrom, and then escape all liability for the acts of those it permits to operate those trucks by the device of a contract whereby someone else assumes that liability? I think not. If such a company desires the benefits of the practice of placing its name on trucks it does not own and claims no responsibility for, it should be required to meet the responsibilities such a practice entails. It was the defendant who placed Bill O'Day and Vince D'Agostino in a position, or permitted them to occupy a position, to mislead the plaintiff as to their authority, and it appears to be reasonable to the Court that a principal ought not to be permitted to clothe his agents with certain indicia of authority to mislead others and then unfairly to limit or restrict the force and effect of their acts to the prejudice of a prudent person who has reasonably acted upon the apparent scope of such authority.

Judgment will therefore be entered for the plaintiff in the

amount of $110.53, together with interest from February 4, 1951, and for his costs herein expended.

Counsel for plaintiff may prepare an entry accordingly, noting the exceptions of defendant, and submit the same to counsel for defendant and to the Court for approval.